**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| SHANE HORSLEY AND JADE HORSLEY, § <br> INDIVIDUALLY, AND MORNAY HUMAN, § <br> AS REPRESENTATIVE OF § <br> THE ESTATE OF JAMES HORSLEY, DECEASED § <br>     Plaintiffs § <br> § <br> v. § <br> § <br> BELL TEXTRON, INC. F/K/A § <br> BELL HELICOPTER TEXTRON, INC. § <br>     Defendant § | C.A. No. 4:19-cv-772 <br><br><br> JURY DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

COME NOW Plaintiffs SHANE HORSLEY and JADE HORSLEY, individually, and MORNAY HUMAN, as representative of the ESTATE OF JAMES HORSLEY, DECEASED (collectively referred to herein as "Plaintiffs"), complaining of Defendant BELL TEXTRON, INC. f/k/a BELL HELICOPTER TEXTRON, INC. ("Bell"). For good and sufficient cause of action, Plaintiffs would respectfully show unto this Honorable Court the following:

**I. PARTIES**

1. Plaintiffs SHANE HORSLEY and JADE HORSLEY are citizens of South Africa. Plaintiffs are the surviving children of JAMES HORSLEY, who died unexpectedly on September 26, 2016, when the helicopter he was piloting crashed into the Atlantic Ocean off the coast of the Republic of Angola. At the time of his death, James Horsley was citizen of South Africa. Plaintiff MORNAY HUMAN is a citizen of South Africa and is the representative of the ESTATE OF JAMES HORSLEY, DECEASED. A probate proceeding was commenced in South Africa and

Plaintiff Mornay Human was duly appointed as the executor of the Estate of James Horsley, deceased.

2.  Defendant BELL TEXTRON, INC. formerly known as BELL HELICOPTER TEXTRON, INC. is a for-profit corporation that was incorporated in the state of Delaware, is doing business in the United States, including Texas, and has its principal place of business in Fort Worth, Texas. Service on Bell may be had by serving its registered agent, Chandria Mercer, 3255 Bell Flight Boulevard, Fort Worth, TX 76118.

3.  As it relates to the event giving rise to this Complaint, Plaintiffs invoke the right to institute this suit against any entity that was conducting business using the assumed or common names of Bell. Plaintiffs respectfully request the Court order Bell to substitute its true name if different from the names stated herein.

## II. JURISDICTION AND VENUE

4.  Pursuant to 28 U.S.C. §1331, the Court has original jurisdiction over this civil action because Plaintiffs' claims arise under the Death on the High Seas Act. 46 U.S.C. 30301 et seq. Additionally, and/or in the alternative, this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state. Plaintiffs Shane Horsley and Jade Horsley are citizens of South Africa. Prior to his death, James Horsley was a citizen of South Africa, and the representative of his estate, Mornay Human, is a citizen of South Africa. Defendant Bell was incorporated in the state of Delaware and has its principal place of business in Fort Worth, Texas.

5.  Pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) and (d), venue is proper in the Northern District of Texas because Bell resides in the district.

6. Maintaining this action in the Northern District of Texas will: 1) allow ease of access to sources of proof; 2) subpoena non-party fact witnesses; 3) minimize the cost of attendance for willing witnesses; and 4) reduce other practical problems that make the trial of a civil action easy, expeditious and less expensive.

7. In addition, the Northern District of Texas will: 1) not have administrative difficulties due to court congestion; 2) have an interest in deciding the matters set forth in this civil action; 3) be familiar with the causes of action and defenses; and 4) not encounter unnecessary problems of conflict of laws or in the application of foreign law.

### III. FACTUAL ALLEGATIONS

8. On or about September 26, 2016, a Bell helicopter (model Bell430, registration number D2-EY)(the "Helicopter") piloted by James Horsley and carrying five (5) commercial passengers, crashed in the Atlantic Ocean off the coast of the Republic of Angola.[1] All passengers, including James Horsley, were killed. Prior to the crash, the Helicopter had left a land-based heliport located in the Republic of Angola and was flying towards an offshore platform.

9. At the time of the crash, James Horsley was working as a pilot for Heli Malango, which was a company providing commercial flight services for the five (5) passengers on the Helicopter.

10. The weather did not cause or contribute to the crash or the deaths of the individuals on the Helicopter, nor did James Horsley's education, training, experience or pilot performance. A defective main rotor pitch link clevis, blades, and bearings caused the Helicopter to crash.

---

[1] The crash site is located at an altitude of the mean sea level on the offshore of the Malongo oil field, in Province of Cabinda, Republic of Angola, located at latitude 5°29'9.91" S and longitude 12°09'.99" E, characterized by an area of the Atlantic Ocean, at a distance of sixteen nautical miles (16 NM) from the departure heliport (Malongo Base heliport) and by depth of approximately one hundred and fifteen (115) feet.

In addition, without limitation, Bell failed to: 1) issue adequate inspection and maintenance recommendations related to the operation and main rotor components replacement, in particular for the main rotors pitch link clevis for the blades and the respective universal bearings; 2) issue adequate time margins recommendations for the main rotor pitch link clevis for blade replacement; 3) issue adequate Non Destructive Tests (NDT) recommendations to be performed on the main rotors pitch link clevis for blade replacement; and 4) issue adequate safety recommendations that make possible the identification of eventual evidences of the universal bearing malfunctioning and respective tolerance margins.

11. Bell was in the business of designing, manufacturing, fabricating, converting, maintaining, repairing, modifying, designing, assembling, distributing, certifying, testing, selling, inspecting, servicing, repairing, marketing, warranting, and advertising helicopters, including the Helicopter involved in the crash.

12. The Helicopter, including its component parts, was in substantially the same condition that it was in when it left the manufacturer and the manufacturer's representatives. The Helicopter had not been materially changed or altered from the time that it was manufactured, delivered and certified airworthy by Bell.

13. Bell wrote, issued and/or approved service manuals, instructions, letters, bulletins, notices and warnings for the Helicopter, and in some cases failed to issue such instructions, letters, bulletins, notices and warnings, and established maintenance manuals, maintenance instructions, service bulletins, inspection schedules and service life schedules for the Helicopter, as alleged herein.

14. Bell knew, or in the exercise of reasonable care should have known, that its Helicopter would be used in the same manner for which it was designed and manufactured, for the

carriage and transportation by air of crew and passengers, and would be used according to the manuals and instructions published by Bell.

15. Plaintiffs are further informed and believe and allege that the fatal failures and the crash were the result of the defective design, manufacture, testing, inspection, and assembly of the Helicopter.

16. James Horsley, as the pilot of the Helicopter, was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result of the crash, James Horsley suffered pre-impact horror, fear and terror, pre-death horror, fear and terror, pain and suffering, physical injury and otherwise fatal injuries in a personal and pecuniary manner. Plaintiffs have sustained economic and non-economic damages, funeral and burial expenses, and all other damages available by law.

17. Plaintiffs respectfully request the opportunity to engage in discovery and amend this Complaint should additional information become available.

## IV. CAUSE OF ACTION AGAINST BELL UNDER THE DEATH ON THE HIGH SEAS ACT

18. Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

19. On or about September 26, 2016, James Horsley died due to the wrongful acts, neglects and/or defaults of Bell, its employees, and agents. Plaintiffs bring this claim under the Death on the High Seas Act, 46 U.S.C. 30301 et seq. (the "Act"). At all times material hereto, Bell owed Plaintiffs a duty of reasonable care under the Act. The Act provides Plaintiffs with a right of action for the death of James Horsley due to Bell's wrongful acts, neglect and/or default occurring upon the high seas. Plaintiffs seek to recover fair and proportionate compensation from Bell for the losses they have sustained.

20.     Sections A-E set forth the wrongful acts, neglect and/or default by Bell, which support Plaintiffs' claim under the Act.

**A. NEGLIGENCE**

21.     Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

22.     At all relevant times, it was the duty of Bell, including their officers, agents and employees, to exercise ordinary care in the design, testing, manufacture, assembly, inspection, certification, sale, distribution, maintenance, repair, servicing, developing and issuing instructions, and warnings, including service intervals, inspection intervals and life limits regarding the Helicopter and its components, including the main rotor pitch link clevis, blades and bearings, so as not to cause injury to or the death to those who used its products.

23.     Notwithstanding these duties, Bell breached its duties in the design, testing, manufacture, assembly, certification, inspection, sale, lease, distribution, maintenance, repair, servicing, developing and issuing instructions and warnings, including service intervals, inspection intervals and life limits regarding the Helicopter and its components, including the main rotor pitch link clevis, blades and bearings.

24.     Plaintiffs are informed, believe and allege that Bell negligently designed and/or manufactured and/or distributed the Helicopter and its components, including the main rotor pitch link clevis, blades and bearings, by utilizing a design and materials prone to premature failure of certain components during normal and foreseeable operations. That failure mode would not have been detected in the ordinary course of pre-flight inspection or otherwise.

25.     Bell, as the designers and/or manufacturers and/or distributors of the Helicopter, had a duty to provide adequate warnings, instructions, training materials, and maintenance and

inspection procedures and intervals to ensure safe operation of the Helicopter in normal flight, and it failed in that duty.

26. Plaintiffs are informed, believe and allege that Bell was required to provide certain warnings, instructions, training materials and maintenance, and inspection intervals and procedures to operators of the Helicopter to enable them to determine the airworthiness and proper operation of the Helicopter. Bell failed to warn, instruct, train and/or issue adequate maintenance and inspection procedures and other instructions regarding such dangers and/or issued inadequate warnings, instructions, training materials, and maintenance and inspection procedures and intervals.

27. On or about September 26, 2016, as a direct and proximate result of one or more negligent acts or omissions of Bell, the Helicopter suffered a catastrophic failure in flight that resulted in the crash and the death of the occupants in the Helicopter.

28. James Horsley was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result, survival damages are warranted.

29. On or about September 26, 2016, as a direct result of Bell's conduct, James Horsley suffered fatal injuries, and Plaintiffs were injured and damaged as alleged herein.

30. As a direct result of the conduct of Bell, Plaintiffs have been deprived of the support that James Horsley would have contributed to his family and estate during his lifetime, and the gifts and benefits that he would have bestowed upon them and that they reasonably expected to receive from him.

31. As a further direct result of the conduct of Bell, Plaintiffs have been deprived of the love, care, companionship, comfort, assistance, protection, affection, society, moral support and guidance of James Horsley.

**B. STRICT LIABILITY FOR DEFECTIVE PRODUCT**

32. Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

33. Plaintiffs are informed, believe and allege that Bell designed, manufactured, fabricated, converted, maintained, repaired, modified, designed, assembled, distributed, certified, sold, inspected, serviced, repaired, marketed, warranted, and advertised the Helicopter, and each and every component part thereof.

34. Bell was required to design the Helicopter, including all service, maintenance and operations manuals so that it was free from design and manufacturing defects, and was required to design and manufacture a helicopter that would not fail in flight.

35. Bell was required to provide certain warnings, instructions, training materials and maintenance, and inspection intervals and procedures to operators of the Helicopter to enable them to determine the airworthiness and proper operation of the Helicopter. Bell failed to warn, instruct, train and/or issue adequate maintenance and inspection procedures, and other instructions regarding such dangers and/or issued inadequate warnings, instructions, training materials, and maintenance and inspection procedures and intervals.

36. The Helicopter was capable of causing, and in fact did cause, personal injury and death to users and consumers while being used in a manner reasonably foreseeable, thereby rendering the Helicopter unsafe and dangerous for use by any user or consumer.

37. On or about September 26, 2016, the Helicopter was being used for the purposes and in the manner for which it designed and manufactured, and in a manner that was reasonably foreseeable to Bell. The Helicopter was in the same condition without significant change from the original condition when sold and delivered by Bell.

38. The Helicopter was defective, not fit for its intended purpose and was unreasonably dangerous by reason of defective design, manufacture, testing, certification, maintenance, repair, modification, assembly, service, inspection, warning, instruction and sale on the part of Bell.

39. As a direct result of defects in Bell's design, manufacture, testing, certification, maintenance, repair, modification, assembly, service, inspection, warning, instruction and sale, the Helicopter, and each and every component part thereof, contained defects, the Helicopter crashed.

40. The defects in the Helicopter and the conduct of Bell were a producing cause of James Horsley's death, and as a result, Plaintiffs were injured and damaged as alleged herein.

**C. BREACH OF WARRANTY**

41. Plaintiffs incorporate by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

42. At the time the Helicopter was certified, sold, serviced and delivered, through and including September 26, 2016, Bell expressly and/or impliedly warranted and represented that the Helicopter, including its instructions and warnings, were airworthy, of merchantable quality, fit and safe for the purposes for which it was designed, and free from defects. Bell further warranted that the instructions, warnings, and maintenance and inspection procedures and intervals regarding the Helicopter were adequate.

43. Plaintiffs are informed, believe and allege that at the time the Helicopter was sold, certified and delivered, through the date of the crash, Bell breached its warranties in that the

Helicopter was defective, not airworthy, not of merchantable quality, not fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, certified, serviced, repaired, maintained, and intended to be used. Bell further breached said warranties in that the instructions, warnings, and maintenance and inspection procedures and intervals were not adequate.

44. Plaintiffs are informed, believe and allege that on the day of the crash, James Horsley was an intended beneficiary of the warranties extended by Bell.

45. On or about September 26, 2016, as a direct and proximate result of the foregoing breach of warranties, the Helicopter failed in flight and crashed, killing James Horsley, and as a result, Plaintiffs were injured and damaged as alleged herein.

### D. VICARIOUS LIABILITY

46. At all times material hereto, Bell is vicariously liable in all respects for the torts of its employees and agents under the theory of Respondeat Superior. The negligent acts of the employees and agents of Bell were a proximate cause of Plaintiffs' injuries. These torts were committed while the employees and agents were acting within their scope of employment with Bell – that is, the acts were within the employees' or agents' general authority, in furtherance of business of Bell, and for the accomplishment of the object for which the employees and agents were hired.

### V. JURY DEMAND

47. Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiffs demand a trial by jury.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs SHANE HORSLEY and JADE HORSLEY, individually, and MORNAY HUMAN, as representative of the ESTATE OF JAMES HORSLEY, DECEASED, pray that Defendant BELL TEXTRON, INC. f/k/a BELL HELICOPTER TEXTRON, INC. be cited to appear and answer herein, and, after due process of law, Plaintiffs have judgment against said Defendant for all damages recoverable under the Death on the High Seas Act, general maritime law, a wrongful death action, a survival action and/or applicable law, including, but not limited to, loss of past and future earnings, loss of net accumulations, loss of services, loss of care, loss of comfort, loss of support, loss of inheritance, loss of nurture, loss of guidance, loss of companionship, pain, suffering and mental anguish, and funeral and burial expenses. Plaintiffs also pray for affirmative relief, pre-judgment interest, post-judgment interest, attorney's fees, expert fees, costs of suit, and such other and further relief, both general and special, in law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICES OF MANUEL SOLIS, PC
6657 Navigation Blvd.
Houston, TX 77011
Phone: (713) 277-7838
Fax: (281) 377-3924

By:/s/ *Stephen R. Walker*
Stephen R. Walker
Texas Bar No. 24034729
Email: swalker@manuelsolis.com
Gregory J. Finney
Texas Bar No. 24044430
Email: gfinney@manuelsolis.com

OF COUNSEL:

LAW OFFICES OF MANUEL SOLIS, PC
6657 Navigation Blvd.
Houston, TX 77011
Phone: (713) 277-7838
Fax: (281) 377-3924

Manuel E. Solis
Texas Bar No. 18826790
Email: msolis@lawsolis.com
(Pro Hac Vice to be filed)

                                      ATTORNEYS FOR PLAINTIFFS